**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION**


PEACH STATE RECOVERY,     :
INC. and DAN MINER,      :
                              :
        Plaintiffs,       :     CIVIL ACTION NO.
                              :     2:06-CV-0050-RWS
     v.                 :
                              :
DAVID GOODWIN,        :
                              :
        Defendant.      :

## <u>ORDER</u>

Plaintiff Peach State Recovery, Inc. ("Peach State") and its employee, Dan Miner, brought this 42 U.S.C. § 1983 action against Deputy Sheriff David Goodwin of the Towns County Police Department, alleging that Deputy Goodwin falsely arrested Miner while he was repossessing a 2005 Dodge Stratus on behalf of the Wachovia Corporation.  This case comes before the Court on Plaintiffs' Motion for Partial Summary Judgment [24], Defendant's Motion for Summary Judgment [26], and Plaintiffs' Motion to Bring Additional Authority [43].  As an initial matter, Plaintiffs' Motion to Bring Additional Authority [43] is **GRANTED** for good cause shown.  After reviewing the entire record, the Court enters the following Order.

**Background**

The facts of this case are largely not in dispute.  Plaintiff Peach State and its employee, Plaintiff Miner, are involved in the repossessions business.  In the fall of 2005, Wachovia Corporation ("Wachovia") contracted with Peach State to repossess a 2005 Dodge Stratus, which was collateral for a car loan Wachovia made to Levi J. Peterson.  Although Wachovia had apparently attempted to perfect the lien on the Dodge Stratus, in May of 2005, the Georgia Department of Motor Vehicles ("DMV") issued Peterson a title free of any notation of a lien.  (See Ex. 8 to Goodwin Dep.)

On August 10, 2005, Miner made his first attempt to repossess the Dodge Stratus.  He went to Peterson's residence and loaded the Stratus onto his truck.  Before leaving Peterson's residence, however, Peterson approached Miner and demanded that Miner release his vehicle.  Peterson presented Miner with the clear title issued by the Georgia DMV.  After discussing the matter with his superior, Miner agreed to release the vehicle back to Mr. Peterson.  Meanwhile, a Town County Sheriff's Deputy arrived on the scene and advised Miner that he should obtain a writ of possession should he wish to repossess the vehicle in the future.

2

Three weeks later, around 4:00 AM on August 31, 2005, Plaintiff Miner returned to Peterson's residence to attempt for the second time to repossess the Dodge Stratus.  Miner successfully loaded the Stratus onto his vehicle and drove away from Peterson's residence, the Stratus in tow.  While driving on a public street in Towns County, an automobile containing Peterson and a female companion came "flying down the road" and cut in front of Miner.  (Miner Dep. at 71.)  Miner called 911to report the incident and learned from the 911 operator that Peterson had also called 911 to report that his vehicle had been stolen.  The 911 dispatcher advised Miner that an officer was en route.

Deputy Derek Richards arrived on the scene and pulled over Miner and the Jeep containing Peterson and his female companion.  Deputy Richards first approached Peterson and his female companion.  Peterson advised Deputy Richards that he had clear title to the Dodge Stratus and that it was being stolen by Miner.  Peterson presented Deputy Richards the clear title issued by the Georgia DMV.

Deputy Richards then spoke to Miner, who stated that he was repossessing the vehicle, and as long as there was no breach of the peace, he was entitled to do so under the self-help provisions of the Georgia Code.  He

3

produced to Deputy Richards four non-official sets of documents:  (1) a

partially illegible copy of the Wachovia Repossession Assignment stating that

Wachovia was a lien holder on the Dodge Stratus and $1362.42 was past due;

(2) a copy of Wachovia's Repossession "Order" directing Peach State to

repossess the Dodge Stratus; (3) a copy of the car-loan contract between

Peterson and Wachovia; and (4) an email from Wachovia to Peach State stating

that a lien existed on the vehicle, but that the DMV had failed to record the lien

before sending Peterson an ostensibly clear title. Although Deputy Richards ran

a National Crime Information Center ("NCIC") report on the three vehicles at

the scene, Deputy Richards did not request, as he apparently could have from

the NCIC database, a lien report on the Dodge Stratus which would have

advised him that  Wachovia had in fact obtained a lien on the Dodge Stratus.

Due to the conflicting documents, Deputy Richards called Defendant

Deputy David Goodwin for advice on handling the situation.  Plaintiffs'

evidence indicates that Deputy Goodwin had been personally acquainted with

Peterson for a number of years.  Deputy Goodwin asked Deputy Richards if

Miner had presented a writ of possession, to which Deputy Richards responded

negatively.  Concluding that clear title in the absence of a writ of possession

4

legally overrode Miner's documents, Deputy Goodwin advised Deputy

Richards to instruct Miner to release the vehicle and turn it over to Peterson.

On this advice, Deputy Richards ordered Miner to release the vehicle to

Peterson.  Miner refused, claiming that he was in rightful possession of the

Dodge Stratus.  Deputy Richards repeated his order at least two more times.

Miner again refused.

Approximately fifteen to twenty minutes later, Deputy Richards called

Deputy Goodwin again to report that Miner had refused to release the Dodge

Stratus.  Deputy Goodwin then responded to the scene.  Once on the scene,

Deputy Goodwin confirmed that Peterson was in possession of a ostensibly

clear title to the Dodge Stratus.  He asked Miner whether he brought a writ of

possession.  Miner responded in the negative, but repeated his assertion that he

was not required to have such documentation under Georgia law since he had

completed self-help repossession on behalf of a lien holder without a breach  of

the peace.  Deputy Goodwin decided that the unencumbered title issued by the

Georgia DMV carried more weight than Miner's documents, and accordingly,

ordered Miner to release the vehicle.  Miner again refused.  After refusing four

or five more orders of Deputy Goodwin to turn over the vehicle, Deputy

Goodwin arrested Miner and charged him with misdemeanor obstruction of a law enforcement officer.  Those charges were eventually dismissed.  This action followed.

## Discussion

Both parties have moved for summary judgment, seeking a court determination as to whether Deputy Goodwin is entitled to qualified immunity on Miner's claim of false arrest.  After discussing the standard on summary judgment, the Court examines whether Deputy Goodwin is entitled to qualified immunity.

## I.      Summary Judgment Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

which it believes demonstrate the absence of a genuine issue of material fact.'"

Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259 (11th Cir. 2004)

(quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.

2d 265 (1986) (internal quotations omitted)).  Where the moving party makes

such a showing, the burden shifts to the non-movant, who must go beyond the

pleadings and present affirmative evidence to show that a genuine issue of

material fact does exist.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257,

106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

The applicable substantive law identifies which facts are material.  Id. at

248.  A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law.  Id.  An issue is genuine when the evidence

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

In resolving a motion for summary judgment, the court must view all

evidence and draw all reasonable inferences in the light most favorable to the

non-moving party.  Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th

Cir. 2002).  But, the court is bound only to draw those inferences which are

reasonable.  "Where the record taken as a whole could not lead a rational trier

7

of fact to find for the non-moving party, there is no genuine issue for trial."

Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.

Ct. 1348, 89 L. Ed. 2d 538 (1986)).  "If the evidence is merely colorable, or is

not significantly probative, summary judgment may be granted."  Anderson,

477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at

586 (once the moving party has met its burden under Rule 56(c), the

nonmoving party "must do more than simply show there is some metaphysical

doubt as to the material facts").

## II.    Qualified Immunity Standard

Qualified immunity provides "complete protection for government

officials sued in their individual capacities if their conduct 'does not violate

clearly established statutory or constitutional rights of which a reasonable

person would have known.'"  Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th

Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727,

73 L. Ed. 2d 396 (1982)).  Its purpose is to "allow government officials to carry

out their discretionary duties without the fear of personal liability or harassing

litigation, protecting from suit all but the plainly incompetent or one who is

knowingly violating the federal law."  Lee v. Ferraro, 284 F.3d 1188, 1194

(11th Cir. 2002) (internal quotation marks and citations omitted).

    Qualified immunity is a question of law for the court.  Post v. City of Fort

Lauderdale, 7 F.3d 1552, 1557 (11th Cir. 1993).  To be entitled to qualified

immunity, the public official "must first prove that he was acting within the

scope of his discretionary authority when the allegedly wrongful acts occurred."

Lee, 284 F.3d at 1194.  The burden then shifts to the plaintiff.  Lee, 284 F.3d at

1194.  There is a two-part test to determine whether a defendant is entitled to

qualified immunity.  First, a court asks " 'whether [the] plaintiff's allegations, if

true, establish a constitutional violation.' "  Vinyard, 311 F.3d at 1346 (quoting

Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)).

Second, after sufficiently stating a constitutional violation, a court must ask

whether the right was "clearly established."  Saucier v. Katz, 533 U.S. 194, 201,

121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  A right is clearly established if its

contours are "sufficiently clear that a reasonable official would understand what

he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640, 107

S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  The salient question is whether the state

of the law at the time of the alleged violation gave officials "fair warning" that

their acts were unlawful.  Hope, 536 U.S. at 740; Holmes v. Kucynda, 321 F.3d 1069, 1078 (11th Cir. 2003); see also Vinyard, 311 F.3d at 1350-53 (articulating a tripartite analytical framework for ascertaining whether right is "clearly established").

In the context of a claim for false arrest, an officer is entitled to qualified immunity where that officer had "arguable probable cause" to make the arrest. In other words, where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" the plaintiff, then the officer is entitled to qualified immunity.  Davis v. Williams, 451 F.3d 759, 762-63 (11th Cir. 2006) (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004)); see also Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).   What constitutes probable cause to arrest, however, is the information known to the defendant at the time of the arrest and not the facts "known to the plaintiff then or those known to a court later."  Jones, 174 F.3d at 1283 n. 4 (quoting Hunter v. Bryant, 502 U.S. 224, 227, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991)).

### III.   Deputy Goodwin is Entitled to Qualified Immunity

Plaintiffs contend that Deputy Goodwin falsely arrested Miner in violation of the Fourth Amendment to the United States Constitution[1] because Miner was rightfully in possession of the Dodge Stratus at issue.  Thus, Plaintiffs claim, Deputy Goodwin was without authority to order Miner to release the vehicle and to arrest Miner for obstructing that order.  Plaintiffs make two principal arguments in support of their contention that qualified immunity is not available under the circumstances of this case.  First, citing Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998), Plaintiffs contend that no reasonable officer in Deputy Goodwin's position could have believed that he was engaged in the lawful discharge of his official duties because he forcibly interfered in a uniquely civil dispute.  Second, Plaintiffs contend that

---

[1] Plaintiffs also bring claims under the related unreasonable-seizure provision of the Georgia Constitution.  See Ga. Const. art. I, sec. 1, par. XII.  To the extent that an individual may bring a private right of action alleging an unreasonable seizure under the Georgia Constitution, the standard for analyzing such a claim is identical to the standard under the United States Constitution.  See State v. Kirbabas, 502 S.E.2d 314, 320, 232 Ga. App. 474 (1994) ("The protection against unreasonable search and seizure of a person comes under Art. I, Sec. 1, Par. XIII of the 1983 Constitution of Georgia. Such constitutional provision is similar to the provisions of the Fourth Amendment and are construed in the same way by Georgia appellate courts.").  Accordingly, the Court resolves Plaintiffs' state constitutional claims in the same manner as it considers their federal constitutional claims and concludes that Deputy Goodwin is entitled to summary judgment.

11

Deputy Goodwin conducted a constitutionally deficient investigation by failing to ascertain that Wachovia was in fact a lien holder of the Dodge Stratus.[2]

Deputy Goodwin responds that, based on the information available to him at the time of the incident, he had an arguable basis to believe that the vehicle belonged to Peterson exclusive of any security interest and thus Miner had engaged in a theft by taking.  Thus, he argues that he lawfully discharged his duty as a police officer by repeatedly ordering Miner to release the vehicle and by arresting Miner after he refused to do so.

---

[2] Plaintiffs also contend in their moving briefs that Deputy Goodwin violated the Fourth Amendment by omitting material information when he later sought an arrest warrant in connection with Miner's initial arrest.  However, Plaintiffs have failed to point the Court to any evidence in the record indicating that Deputy Goodwin sought such a warrant or that he did so absent information available to him at the time.  "Although such evidence may exist somewhere in the record, it is not the Court's duty to comb the record to attempt to find reasons to deny a motion for summary judgment."  Powers v. CSX Transp., Inc., 190 F. Supp. 2d 1284, 1286 n. 2 (S.D. Ala. 2002).  Having failed to cite any evidence in response to Defendant's request for summary judgment on this claim, Defendant Goodwin is entitled to judgment as a matter of law.  In any event, since the Court concludes below that Deputy Goodwin had the arguable authority to order Miner to release the vehicle and Miner refused, Deputy Goodwin had arguable probable cause in seeking a warrant for Miner's arrest for obstruction of justice.

Additionally, in the final two sentences of Plaintiffs' moving brief, Plaintiff contends that Defendant Goodwin violated the Fourth Amendment by seizing and impounding Peach State's tow truck without probable cause.  Assuming without deciding that Plaintiffs have sufficiently raised this claim (which does not appear in their Complaint), Deputy Goodwin is entitled to qualified immunity on this claim for the same reasons he is entitled to qualified immunity on Plaintiffs' false arrest claim.

12

**A.     Georgia Law of Repossession**

Before turning the qualified immunity inquiry, a brief overview of

Georgia's law of self-help repossession is warranted.  In Georgia, a secured

party may, upon a debtor's default, repossess a collateralized asset so long as it

does so without a breach of the peace.  O.C.G.A. § 11-9-609(b);[3] see generally

Robbins v. Farmers & Merchants Bank, 289 S.E.2d 288, 161 Ga. App. 53

(1982).  The self-help repossession statute allows any "secured party" to

repossess without judicial process and does not explicitly state that perfection of

the security interest is a prerequisite to repossession.  O.C.G.A. § 11-9-609(b).

---

[3] O.C.G.A. § 11-9-609 provides in pertinent part:

  (a)    Possession; rendering equipment unusable; disposition on debtor's
         premises. After default, a secured party:
         (1)    May take possession of the collateral; and
         (2)    Without removal, may render equipment unusable and
                dispose of collateral on a debtor's premises under Code
                Section 11-9-610.

  (b)    Judicial and nonjudicial process. A secured party may proceed
         under subsection (a) of this Code section:

         (1)    Pursuant to judicial process; or
         (2)    Without judicial process, if it proceeds without breach of the
                peace.

Id.

13

Thus, although there is no specific Georgia case on point, it appears that the holder of a security interest can self-help repossess even if it has failed to perfect its security interest pursuant to the Motor Vehicle Certificate of Title Act.[4]  See Franklin Finance Co. v. Strother Ford, Inc., 110 Ga. App. 365, 367-368 (1964) (stating that the failure to comply with the Motor Vehicle Certificate of Title Act with respect to the perfection of a security interest "does not affect the creation of the security interest, which remains a matter of contract between the parties"); Hallman v. State, 141 Ga. App. 527, 528 (1977) (stating that "the failure to [perfect a security interest] does not nullify the contract but merely has the effect of loss of priority where the rights of third parties who complied with the [Motor Vehicle Certificate of Title] Act have intervened"); Ga. Op. Atty. Gen. No. 90-8 (Mar. 1, 1990) ("[A] used car dealer who has a security interest in a vehicle may exercise all rights afforded to him

---

[4] See generally O.C.G.A. § 40-3-50.  A lien holder may perfect a security interest in an automobile by delivering to the DMV a notice of a security interest, an application for a new certificate of title, the existing certificate of title, and a required fee.  O.C.G.A. §§ 40-3-50(b)(1)(A-B).  When such items are submitted, the designated authority "shall issue a receipt or other evidence of the date of filing of such application or notice," O.C.G.A. § 40-3-50(b)(2), and mail the certificate of title to "the holder of the first security interest or lien named in it."  O.C.G.A. § 40-3-26(a)(1).

14

by the security agreement, including repossession, despite not having perfected his security interest.").[5]

Under Georgia's repossession law, Miner was thus authorized to repossess the Dodge Stratus, and Miner's protestations to Deputy Goodwin that he was within his rights as an agent of Wachovia to repossess the Dodge Stratus were legitimate.  If Deputy Goodwin had no arguable basis to disbelieve that (1) Wachovia had a security interest in the Dodge Stratus, (2) Peterson had defaulted on Wachovia's loan, and (3) Miner was acting as an agent of Wachovia, then Deputy Goodwin would have had no legitimate basis to order Miner to release the Stratus or to arrest him for failing to do so.

But those were not the facts known to Deputy Goodwin at the time of the incident.  Regardless of whether those facts now exist in the record or can be gleaned in hindsight, they do not answer the question of whether Deputy Goodwin is entitled to qualified immunity.  Based on what Deputy Goodwin

---

[5] Other states with similar repossession provisions have so held.  <u>See</u>, <u>e.g.</u>, <u>Harkness v. EZ Pawn Alabama, Inc.</u>, 724 So.2d 32, 33-34 (Ala. Ct. App. 1998) ("[A] secured party's rights over the collateral as against the debtor are unaffected by failure to perfect the security interest." (citations and quotations omitted)); <u>South Division Credit Union v. Deluxe Motors, Inc.</u>, 355 N.E.2d 715, 717 (Ill. Ct. App. 1976) (same); <u>Roberge v. Bankers Trust Co. of Albany, N.A.</u>, 446 N.Y.S.2d 443, 443 (N.Y. App. Div. 1981) (same).

AO 72A
(Rev.8/82)

knew at the time of the incident, Goodwin had  reason to doubt that Miner was in lawful possession of the Dodge Stratus.  In light of the undisputed facts that (1) Peterson was the owner of the vehicle, (2) he had a clear, unencumbered title issued by the State of Georgia, and (3) he had accused Miner of theft, Deputy Goodwin had arguable probable cause to believe that Miner was in the process of stealing Peterson's vehicle.  Cf. Paullin v. City of Loxley, 171 F. App'x 773, 777 (11th Cir. 2006) (holding, in case involving arrest of repossessor, that officer was entitled to qualified immunity where car owner alleged that plaintiff stole car, plaintiff did not deny involvement in repossession, and documents that plaintiff produced to officer did not show car owner in default).  He thus had the arguable authority to order Miner to release the vehicle pending further investigation.  When Miner refused to comply, Deputy Goodwin had arguable probable cause to arrest him for obstruction.  For these reasons and those provided below, Deputy Goodwin is entitled to qualified immunity.

A.    Discretionary Authority

At the threshold, the Court must determine whether Deputy Goodwin has met his burden of showing that he was acting within the scope of his

16

discretionary authority when the allegedly wrongful acts occurred.  <u>Lee</u>, 284
F.3d at 1194.   "To establish that the challenged actions were within the scope
of his discretionary authority, a defendant must show that those actions were (1)
undertaken pursuant to the performance of his duties, and (2) within the scope
of his authority."  <u>Harbert Int'l v. James</u>, 157 F.3d 1271, 1282 (11th Cir. 1998).
To that end, "a court must ask whether the act complained of, if done for a
proper purpose, would be within, or reasonably related to, the outer perimeter of
an official's discretionary duties."  <u>Id.</u> (quotation marks omitted).

As to the first inquiry, Deputy Goodwin responded to the scene pursuant
to the performance of his official duties.  As a police officer, Deputy Goodwin
had "the general duty"—and the authority—"to enforce the law and maintain
the peace."  <u>Duncan v. State</u>, 294 S.E.2d 365, 366, 163 Ga. App. 148 (1982).
Peterson had called 911 to report that his vehicle had been stolen.  Miner had
called 911 to report that he was being placed in danger by Peterson's aggressive
driving.  Deputy Goodwin responded to the scene as a police officer to maintain
the peace, to provide backup to Deputy Richards, to investigate whether any
criminal acts had taken place, to detain any individual who had committed a
crime, and to seize the fruits of any crime.  His actions on the scene, including

17

interviewing the individuals involved, investigating whether Miner had taken property owned by another person, and ordering Miner to relinquish control of property in a public location that Deputy Goodwin had an arguable basis to believe was unlawfully taken, were actions undertaken pursuant to the performance of his official duties as a police officer.

Moreover, Deputy Goodwin acted within the scope of his authority.  As a police officer, Deputy Goodwin was charged with the responsibility of keeping the peace, investigating criminal activity, and, under certain circumstances, detaining those who he suspected were engaged in criminal activity and seizing the fruits of their criminal activity.  Although Plaintiffs argue that the right circumstances did not exist for Deputy Goodwin to arrest Miner or to instruct him to relinquish control over the Stratus, "[t]he fact that the right circumstances . . . may not have been present in this case is irrelevant to [the] inquiry."  See Alexander v. Bostic, 458 F.3d 1295, 1304 (11th Cir. 2006).  The proper inquiry "is not whether it was within the defendant's authority to commit the allegedly illegal act" because "[f]ramed that way, the inquiry is no more than an 'untenable' tautology."  Harbert Int'l, 157 F.3d at 1282.  Rather, the question is whether Deputy Goodwin's act of instructing Miner to release the

Dodge Stratus and his subsequent act of arresting Miner for failing to do so, "if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of [Deputy Goodwin's] discretionary duties." Id. (quotation marks omitted).   Had Miner actually been in the process of stealing the Dodge Stratus, there is no question that Deputy Goodwin could have pulled Miner over on a public street, ordered that he relinquish the Stratus, and arrested Miner for refusing to do so.   Accordingly, Deputy Goodwin acted within the scope of his discretionary authority.[6]

---

[6] Deputy Goodwin responded to a report of criminal activity and not a request for assistance in a civil dispute.  For that reason, Plaintiffs' reliance on Thornton v. City of Macon, 132 F.3d 1395 (11th Cir. 1998), Sheth v. Webster, 145 F.3d 1231, 1238 (11th Cir. 1998), and Motes v. Myers, 810 F.2d 1055 (11th Cir. 1987), is misplaced.  In each of those cases, the officers were denied qualified immunity because they attempted to forcibly resolve a uniquely civil dispute, whereas in this case, Deputy Goodwin acted within his discretionary authority to enforce the criminal law.

In Thornton, the Eleventh Circuit held that several police officers did not act within their discretionary authority when they entered the plaintiff's private residence without a warrant and arrested the plaintiff for obstruction of justice after the plaintiff refused to agree to a property exchange between the plaintiff and his former roommate, who had requested police assistance in recovering a mattress that she had left inside the residence years before.  Because "the plaintiff had committed no crime" and the officers had no warrant to enter the residence, the court held that the officers were "merely attempting forcibly to resolve a civil dispute," and thus acted outside of their discretionary authority by arresting the plaintiff. Id. at 1399.  The Eleventh Circuit came to a similar conclusion in Sheth v. Webster, 145 F.3d 1231, 1238 (11th Cir. 1998), in which a police officer beat up and arrested a hotel operator for failing to refund a hotel patron a portion of his rent, and in Motes v. v. Myers, 810 F.2d 1055, 1059-60 (11th Cir. 1987), in which an officer falsely swore out a warrant against a landlord for retaining an air conditioner left by a previous tenant.

In sum, the Court concludes that Deputy Goodwin's actions were within his discretionary duties and turns to determine whether arguable probable cause supports his claim to qualified immunity.

B.      Arguable Probable Cause

Deputy Goodwin arrested Miner for misdemeanor obstruction of a law enforcement officer.  Thus, the Court must examine whether Deputy Goodwin had arguable probable cause to believe that Miner had committed that crime.

Under Georgia law, the elements of misdemeanor obstruction of a law enforcement officer are "knowingly and willingly obstructing or hindering, (2) any law enforcement officer, (3) in the lawful discharge of his official duties."

---

Unlike in Thornton, Sheth, and Motes, Deputy Goodwin responded to a individual's claim that a crime was in progress and responded to a scene on a public street—as opposed to a private residence or business—involving Miner's admitted taking of an automobile owned by another person.  Although the lawfulness of Miner's *possession* of the automobile was in dispute, there was no dispute that Peterson—not Miner—*owned* the automobile.  Deputy Goodwin, moreover, was presented with official documentation that no liens existed on the automobile and the concomitant accusation that Miner had taken it without legal authorization.  While Plaintiffs are correct that the dispute was—in part—civil in nature, what is different about this case is that Deputy Goodwin had an arguable basis to believe that a *crime had also occurred and was in progress*.  He was thus within his discretionary authority to put an end to that crime and order Miner to release the automobile.  See Paullin, 171 F. App'x at 777 (stating, in case involving alleged false arrest of individual conducting repossession on behalf of car dealership, that "we reject argument that Mitchum's knowledge of the existence of a lien should have signaled to Mitchum that he was faced with a civil dispute, rather than a criminal matter").

<u>Larkin v. State</u>, 495 S.E.2d 605, 606, 230 Ga. App. 129 (1998).  Here, there is no dispute as to the first two elements.  Thus, the sole question for purposes of the qualified immunity analysis is whether no reasonable officer could have believed, based upon the circumstances known to Deputy Goodwin at the time of the incident, that ordering Miner to relinquish control of the Dodge Stratus and arresting him for failing to do so was in the lawful discharge of an officer's duties.  As the Court describes below, at the time of the incident, the conflicting witness statements and conflicting documentation presented to Deputy Goodwin gave him both the authority to direct Miner to release the Dodge Stratus and the arguable probable cause to arrest him for failing to do so.

On the one hand, Deputy Goodwin was presented with  Peterson's statements and documentation.  Peterson asserted, as he had three weeks prior, that he was the owner of the Dodge Status, that the Stratus was not encumbered by any security interest, and that Miner had stolen it out of his front yard.  Peterson presented official documentation from the State of Georgia in support of his statements.  He showed Deputy Goodwin a free and clear Certificate of Title, bearing his name and no notation of lien holders.  A Certificate of Title, under Georgia law, "is prima facie evidence of the facts appearing on it."

Thornton v. Alford, 112 Ga. App. 312 (1965); see also O.C.G.A. § 40-2-24(c) ("[A] certificate of title issued by the commissioner or the commissioner's duly authorized county tag agent is prima-facie evidence of the facts appearing on it."). Thus, Deputy Goodwin's awareness of Peterson's clear title gave Deputy Goodwin not only an arguable—but a firmly legal—basis to believe that Peterson was the only rightful possessor of the Dodge Stratus, since no lien holders appeared on the title who would have had the authority to repossess. In the face of clear title and Peterson's adamant allegation of criminal theft, Deputy Goodwin had reason to believe a theft was taking place. See Rankin v. Evans, 133 F.3d 1425, 1441 (11th Cir. 1998) (stating that an officer generally is entitled to rely on a victim's criminal complaint as support for probable cause).

But Deputy Goodwin did not rush to judgment. He did not immediately arrest Peterson. Instead, he sought out more information. He approached Miner, who had a starkly different story, with less persuasive, unofficial corroborating documentation. In Deputy Goodwin's mind, his partially illegible bank documents and email from the bank did not overcome the *prima facie* evidence of Peterson's title. Miner's name, moreover, was not present on any of the documentation—nor did he have identification as a Peach State

22

employee.  On this limited information, Deputy Goodwin could not be firmly

convinced—reasonably so, in the Court's view—that either (1) there was a

valid lien on the Dodge Stratus at issue or (2) Miner was acting as an agent of a

valid lien holder.  See Rodriguez v. Farrell, 294 F.3d 1276, 1278 (11th Cir.

2002) (stating that "a police officer need not credit everything a suspect tells

him").

Deputy Goodwin was thus faced with a range of options.  Although he

had intervened at the request of both parties, he could have declared it a "civil

dispute," washed his hands of the matter, and walked away, despite *prima facie*

evidence of Peterson's unencumbered ownership of the Stratus and Peterson's

persistent allegation of theft—possibly allowing the crime of theft to continue.

He could have also, as Plaintiffs suggest, attempted to conduct a lengthier and

more intensive investigation on the side of a public road at 5:00 in the morning.

Just as well, he might have rushed to judgment and arrested Miner for theft.

Finally, Deputy Goodwin could have required Miner to release the vehicle to

Peterson until a further investigation could be conducted.

Plaintiffs have the burden of convincing the Court that, when presented

with this difficult decision and this range of options,  no reasonable officer at

23

the time of the incident would have taken the latter, perhaps most cautious course, because no reasonable officer could have believed that he had discretionary authority to order Miner to release the vehicle and, upon Miner's refusal, to arrest him for obstruction for failing to do so.  Yet Plaintiffs concede that it would have been reasonable for Deputy Goodwin to "seize the Stratus and the next morning check with Wachovia or the Department of Motor Vehicles."  (Pls.' Resp. to Defs.' Mot. for Summ. J. at 7-8.)  On this record, the Court concludes that Deputy Goodwin had an arguable basis to believe that he was within his discretionary authority to order Miner to release the vehicle and to arrest Miner for failing to do so.

Although Plaintiffs speculate that Deputy Goodwin may have conducted a more extensive investigation, the time of day and the circumstances of the incident did not allow, much less mandate, that Deputy Goodwin take the opportunity to conduct a more extensive investigation.  It was 5:00 AM, and all parties were on the side of the road.  It was not feasible for Deputy Goodwin to detain the parties for four hours to await the opening of the bank or the DMV.  Moreover, Deputy Goodwin testified that he was not aware that he could have requested lien information from the NCIC, and Plaintiffs have introduced no

evidence establishing that a reasonable officer would have known of such a report, requested such a report, and relied upon its accuracy in making a determination as to whether criminal activity had or had not occurred.  Finally, after Miner refused upwards of eight orders to release the Dodge Stratus, Deputy Goodwin had arguable probable cause to believe that he had obstructed a lawful order by a police officer, and thus a reasonable officer could have believed that no further investigation into the crime of obstruction of justice was necessary.

For these reasons, the Court concludes that Deputy Goodwin is entitled to qualified immunity.  Accordingly, Plaintiffs' Motion for Partial Summary Judgment [24] is **DENIED** and Defendant's Motion for Summary Judgment [26] is **GRANTED**.

## Conclusion

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment [24] is **DENIED**.  Defendant's Motion for Summary Judgment [26] is **GRANTED**.  Plaintiffs' Motion to Bring Additional Authority [43] is **GRANTED**.  The Clerk is **DIRECTED** to **ENTER JUDGMENT** in favor of Defendant and against Plaintiffs in this action.

AO 72A
(Rev.8/82)

**SO ORDERED** this __8th__ day of January, 2008.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)